UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA and
STATE OF FLORIDA *ex rel.*
BARBARA SCHUBERT,

    Plaintiff,

vs.                                            Case No. 8:11-cv-1687-T-27EAJ

ALL CHILDREN'S HEALTH SYSTEM, INC.,
et al.,

    Defendants.
_____/

## ORDER

**BEFORE THE COURT** is Defendants' Motion to Dismiss Relator's Second Amended Complaint and Memorandum of Law (Dkt. 34), to which Relator has responded in opposition (Dkt. 35). The United States Government and Defendants were granted leave to file a statement of interest (Dkt. 38) and a reply (Dkt. 42), respectively. Upon consideration, the motion (Dkt. 34) is GRANTED.

I.    INTRODUCTION

Barbara Schubert ("Relator") brings this action under the *qui tam* provisions of the Federal False Claims Act and the Florida False Claims Act. Defendants are related corporate entities that collectively operate All Children's Hospital in St. Petersburg, Florida (Dkt. 2 ¶ 9). Defendant All Children's Health System, Inc. (ACHS) wholly owns and operates Defendants Pediatric Physicians Services, Inc. (PPS) and All Children's Hospital, Inc. (ACH) (*id.* ¶¶ 10, 11). PPS is responsible for physician staffing at All Children's, including recruitment and acquisition of physicians and their

1

practices (*id.* ¶ 10). ACH is responsible for managing the daily operations of All Children's, including "making claims and receiving payment for services rendered pursuant to government healthcare coverage" (*id.* ¶ 11).

From 1998 to 2011, Relator was the Director of Operations for PPS (*id.* ¶ 8). In that role, she was tasked with restructuring the compensation plan for physicians working at All Children's (*id.* ¶ 33). Her compensation plan drew on nationwide surveys of base salaries and bonus rates to determine "an actual fair market median range" for physician compensation (*id.*). Under the plan, compensation was not to exceed the 75th percentile of national average salaries in the physician's practice area (*id.*).

Despite this plan, Relator alleges that ACHS aggressively pursued, and overcompensated, pediatric practices and physicians in an effort to guarantee loyalty to All Children's (*id.* ¶ 34). All told, from 2007 to 2009, ACHS acquired the services of at least 75 physicians, a third of whom were paid above the 75th percentile of national average salary, and 18 of whom were paid over the 90th percentile (*id.* ¶ 40). Relator alleges that those 18 physicians are approved Florida Medicaid providers and that "[f]rom their respective dates of hire to the present, ACHS has submitted and continues to submit false claims to Medicaid for services rendered by the physicians" (*id.* ¶ 41). Relator does not identify any specific claims submitted, however.

At its essence, Relator's theory is that every claim submitted by ACH since Defendants began aggressively recruiting and overpaying physicians is false because the compensation scheme violates the Stark Amendment and the Anti-Kickback Statute. Indeed, Relator characterizes her theory of liability as "an underlying statutory violation that taints all resulting claims" (Dkt. 35 at 10). Consequently, the Second Amended *Qui Tam* Complaint asserts three causes of action against

Defendants. Count I alleges the submission of false claims[1] made in violation of the Stark Amendment, 42 U.S.C. § 1395nn(a).[2] Count II alleges the submission of false claims made in violation of the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b. Count III alleges violations of the Florida False Claims Act, § 68.082, *Florida Statutes*. Defendants move to dismiss all three counts for failure to state a claim on which relief may be granted.

## II.   STANDARDS

To state a claim under the False Claims Act, a relator must satisfy two pleading standards. First, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This Rule does not require detailed factual allegations, but it demands more than an unadorned, conclusory accusation of harm. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must "plead all facts establishing an entitlement to relief with more than 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324 (11th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Although it is axiomatic that the Court must accept as true all of the allegations contained in the complaint, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "[L]egal conclusions can provide the framework of a complaint, [but] they must be supported by factual allegations." *Id.* at 679.

---

[1] Relevant to this case, the False Claims Act, 31 U.S.C. § 3729, imposes civil liability on any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," or who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." §§ 3729(a)(1)(A), (a)(1)(B).

[2] If a physician has a "financial relationship" with an entity, the Stark Amendment prohibits the physician from "mak[ing] a referral to the entity for the furnishing of designated health services for which payment otherwise may be made" under Medicare, and prohibits the entity from "present[ing] or caus[ing] to be presented a claim under [Medicare] or bill to any individual, third party payor, or other entity for designated health services furnished pursuant to a referral" otherwise prohibited by the Stark Amendment. 42 U.S.C. §§ 1395nn(a)(1)(A), (a)(1)(B).

A False Claims Act complaint must also "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1310 (11th Cir. 2002). The particularity requirement of Rule 9(b) is satisfied if the complaint alleges "facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them." *Hopper v. Solvay Pharm., Inc.*, 588 F.3d 1318, 1324 (11th Cir. 2009) (citing *Clausen*, 290 F.3d at 1310). Generally, in order to plead the submission of a false claim with particularity, "a relator must identify the particular document and statement alleged to be false, who made or used it, when the statement was made, how the statement was false, and what the defendants obtained as a result." *United States ex rel. Matheny v. Medco Health Solutions, Inc.*, 671 F.3d 1217, 1225 (11th Cir. 2012).

### III. DISCUSSION

#### A. Counts I and II of the Second Amended *Qui Tam* Complaint Do Not State with Particularity Violations of the False Claims Act.

The "central question" in a claim brought under the False Claims Act is "whether the defendant ever presented a 'false or fraudulent claim' to the government." *Hopper v. Solvay Pharm., Inc.*, 588 F.3d 1318, 1326 (11th Cir. 2009) (quoting *Clausen*, 290 F.3d at 1311). "Without the *presentment* of such a claim, while the practices of an entity that provides services to the Government may be unwise or improper, there simply is not actionable damage to the public fisc as required under the False Claims Act." *Clausen*, 290 F.3d at 1311. "The False Claims Act does not create liability merely for a health care provider's disregard of Government regulations or improper internal policies unless, as a result of such acts, the provider knowingly asks the Government to pay

4

amounts it does not owe." *Id.* The submission of a false claim is the *sine qua non* of a False Claims Act violation. *Id.*

The requirement of alleging the presentment of a false claim cannot be overcome by detailing other improper activity. Specifically, Rule 9(b) does not permit a relator "merely to describe a private scheme in detail but then to allege simply and without any stated reason for his belief that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the Government." *Id.* "[I]f Rule 9(b) is to be adhered to, some indicia of reliability must be given in the complaint to support the allegation of *an actual false claim* for payment being made to the Government." *Id.*

Relator does not dispute that she fails to identify a single false claim in her complaint. Relator submits that she need not identify specific false claims because *each and every* claim submitted under Defendants' fraudulent compensation system was contrary to the Stark Amendment and the Anti-Kickback Statute, and therefore inherently false. According to Relator, each claim submitted to the federal government must be accompanied by a certification that the entity has complied with all applicable laws and regulations, including the Stark Amendment and the Anti-Kickback Statute. Relator alleges that by filing claims and falsely certifying compliance with those laws, Defendants are liable under the False Claims Act.

This false certification, or "implied certification," theory is viable in the Eleventh Circuit. *See United States ex rel. McNutt v. Haleyville Med. Supplies, Inc.*, 423 F.3d 1256, 1259 (11th Cir. 2005); *see also United States ex rel. Augustine v. Century Health Servs., Inc.*, 289 F.3d 409, 413-14 (6th Cir. 2002) (recognizing the "implied certification" theory of liability under the Federal Claims Act); *United States ex rel. Freedman v. Suarez-Hoyos*, 781 F. Supp. 2d 1270, 1278-79 (M.D. Fla.

2011) (recognizing the Eleventh Circuit's acceptance of implied certification as a theory of liability in *McNutt*); *United States ex rel. Thomas v. Bailey*, No. 4:06CV00465 JLH, 2008 WL 4853630, at *7 (E.D. Ark. Nov. 6, 2008) (citing *McNutt*, along with other cases, as support for the "legally false certification" theory). "When a violator of government regulations is ineligible to participate in a government program and that violator persists in presenting claims for payment that the violator knows the government does not owe, that violator is liable, under the [False Claims Act], for its submission of those false claims." *McNutt*, 423 F.3d at 1259.

Proceeding under the false certification theory, however, does not alleviate Relator's obligation to plead her case with particularity. Indeed, in *McNutt*, the complaint alleging false certification survived dismissal because it identified *specific false claims. See id.* at 1260 ("[T]he government has identified as false numerous specific claims the Burelsons made to the federal government."). In *Matheny*, another false certification case, the complaint survived without identifying specific claims only because the Relator specifically described the false certifications submitted to the government by alleging "exactly which documents . . ., exactly which sentence and its substance . . ., who was responsible . . ., when the Certification was submitted . . ., how the statement misled the government . . ., and what the Defendants gained as a result." 671 F.3d at 1225.

The Second Amended *Qui Tam* Complaint does not allege violations of the False Claims Act with the specificity of *McNutt* and *Matheny*. It does not identify any false claims presented to the government, nor has relator alleged Defendants' kickbacks, referrals, or false certifications with particularity. While her complaint details the compensation paid to 18 of the physicians working at All Children's, no patients, dates, referrals, procedures, or bills leading to false claims are identified, and unlike *Matheny*, no specific false certifications are described. *See Clausen*, 290 F.3d at 1312

("[Relator] merely alleged that 'these practices resulted in the submission of false claims for payment to the United States.' No amounts of charges were identified. No actual dates were alleged. No policies about billing or even second-hand information about billing practices were described."). Without specific allegations of fraudulent certification, billing, or referral, inferences would have to be drawn for this complaint to state a claim, but "inferences about the submission of fraudulent claims would 'strip[] all meaning from Rule 9(b)'s requirements of specificity.'" *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1013 (11th Cir. 2005) (quoting *Clausen*, 290 F.3d at 1312 n.21).[3]

In certain instances, relators are excused from identifying specific false claims, certifications, or referrals if the court can infer an "indicia of reliability" from the relator's position or circumstances. For example, the relator in *Hill* satisfied Rule 9(b) without identifying specific false claims because she "worked in the very department where she alleged the fraudulent billing scheme occurred." *Hill v. Morehouse Med. Assocs., Inc.*, 82 Fed. Appx. 213, 2003 WL 22019936, at *4 (11th Cir. Aug. 15, 2003).

Relator's allegations do not carry the same indicia of reliability as those in *Hill*. Relator did not work "in the very department where she alleged the fraudulent billing scheme occurred." In fact, she did not even work for the same company that is alleged to have presented false claims. Relator worked for PPS, but according to Relator, ACH was responsible for "making claims and receiving

---

[3]Similar allegations of overcompensation have failed to state violations of the False Claims Act where no claims were identified or the referral scheme was not described with particularity. *See United States ex rel. Mastej v. Health Mgmt. Assocs., Inc.*, 869 F. Supp. 2d 1336, 1341-42 (M.D. Fla. 2012) (dismissing *qui tam* complaint for failing to identify any false claims related to the scheme to overcompensate physicians or any false claims for reimbursement for patients who were referred by the allegedly overcompensated physicians); *United States ex rel. Osheroff v. Tenet Healthcare Corp.*, No. 09-cv-22253-CIV, 2012 WL 2871264 (S.D. Fla. July 12, 2012) (dismissing *qui tam* complaint that alleged that discounted rent given to physicians "intended to induce or reward referrals" because there were "no factual allegations suggesting any *quid pro quo* of below-fair-market value leases in exchange for referrals").

payment for services rendered pursuant to government healthcare coverage" (Dkt. 2 ¶ 11). Removed from the billing process of ACH and the referral practices of the accused physicians, Relator lacks the indicia of reliability that might otherwise excuse her failure to identify specific false claims or certifications. *See United States ex rel. Sanchez v. Lymphatx, Inc.*, 596 F.3d 1300, 1303 (11th Cir. 2010) ("Despite her assertion that she had direct knowledge of the defendants' billing and patient records, however, Sanchez failed to provide any specific details regarding either the dates on or the frequency with which the defendants submitted false claims, the amounts of those claims, or the patients whose treatment served as the basis for the claims. Without these or similar details, Sanchez's complaint lacks the 'indicia of reliability' necessary under Rule 9(b) . . . ."); *Mastej*, 869 F. Supp. 2d at 1344 (finding allegations by a relator working in an executive position in the defendant corporation at a level similar to that held by Relator Schubert to lack indicia of reliability because the relator made "no allegations that he had any familiarity, through his various roles with the defendants and subsequent to his tenure with the defendants, with the billing practices of the defendants").[4]

## B. Count III Must Also Be Dismissed.

Count III alleges that the same actions underlying Counts I and II violated the Florida False Claims Act. Because the Florida False Claims Act mirrors the federal False Claims Act and is

---

[4] Relator's failure to plead claims, schemes, and false certifications with specificity is fatal to the entirety of Counts I and II. If it were determined, however, that the failure to alleged specific false claims was fatal only to claims asserted under 31 U.S.C. § 3729(a)(1)(A), the Second Amended *Qui Tam* Complaint would fail to allege a cause of action for a violation of subsection 3729(a)(1)(B), as well. Subsection (a)(1)(B) requires Relator to "allege with particularity, pursuant to Rule 9(b), that the false statements ultimately led the government to pay amounts it did not owe." *Mastej*, 869 F. Supp. 2d at 1345 (citing *Hopper*, 588 F.3d at 1329). Relator has failed to allege with specificity any amounts the government paid that it did not owe and therefore fails to state a claim under subsection (a)(1)(B).

subject to the same pleading standard, Count III must be dismissed. *See United States v. Adventist Health Sys./Sunbelt, Inc.*, No. 6:10-cv-1062-Orl-28GJK, 2012 WL 3105586, at *2 n.4 (M.D. Fla. July 30, 2012); *United States ex rel. Watine v. Cypress Health Sys. Fla., Inc.*, No. 1:09cv137-SPM-GRJ, 2012 WL 467894, at *1 (N.D. Fla. Feb. 14, 2012).[5]

Accordingly,

1) Defendants' Motion to Dismiss Relator's Second Amended Complaint (Dkt. 34) is GRANTED.

2) Relator is GRANTED leave to file a Third Amended *Qui Tam* Complaint within **fourteen (14) days** of the date of this order, but cautioned that failure to plead a cause of action in the next iteration may result in dismissal with prejudice.[6]

**DONE AND ORDERED** this 15th day of April, 2013.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record

---

[5] Defendants also argue that Counts I and III should be dismissed for failing to state a claim because the Stark Amendment applies only to Medicare and not to Medicaid. Because Relator does not state her claims with particularity, that issue need not be reached.

[6] Counsel are reminded that Relator's complaint must comply with Federal Rule of Civil Procedure 8(a)(2). Relator's amended complaint should contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Digressions into legislative and regulatory history and detailed recitations of applicable statutes do fall into the category of facts necessary to make a "short and plain statement of the claim." (*See* ¶¶ 12 - 16; 17; 18 - 19; 20 - 26; 27 - 29). Failure to adhere to this rule may result in dismissal. *See Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 367 (11th Cir. 1996) ("Experience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice.").