**IN THE UNITED STATES DISTRICT
COURT FOR THE MIDDLE DISTRICT OF
FLORIDA TAMPA DIVISION**

**UNITED STATES OF AMERICA and
STATE OF FLORIDA** *ex rel.*

**BARBARA SCHUBERT**

       **Plaintiff,**

**v.**                                    **CASE NO. 8:11-CV-1687-T-27EAJ**

**ALL CHILDREN'S HEALTH SYSTEM, INC, et al.,**

       **Defendants.**

_____/

## UNITED STATES' STATEMENT OF INTEREST REGARDING DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT

On January 10, 2013, the Defendants filed a motion to dismiss the Relator's Second Amended Complaint. On February 14, 2013, the United States filed a Statement of Interest addressing several discrete legal issues raised by that motion. The Defendants' July 26, 2013 motion to dismiss the Relator's Third Amended Complaint raises some of the same issues as their previous motion, though the Defendants raise some new arguments in support of their prior positions. The United States is therefore filing this Statement of Interest to address those discrete issues.

First, the Defendants continue to urge this Court to nullify 42 U.S.C. § 1396b(s), which extends the application of the Stark Statute, 42 U.S.C. § 1395nn, to Medicaid claims. Although the Defendants present several new arguments in support of this position, all of the Defendants' arguments remain inconsistent with the express language of the statute and with all existing legal authority.

Second, the Defendants continue to overstate the Relator's pleading obligations regarding the issue of Fair Market Value.

Third, the United States reiterates its request that if the Court dismisses the case based on any inadequacy in the Relator's pleadings, such dismissal be without prejudice to the United States.

I.    BACKGROUND

The Stark Statute, 42 U.S.C. § 1395nn, was designed to protect the integrity of physicians' medical judgments by ensuring that doctors' medical decisions are based solely on their patients' best interests, and are not influenced by the doctors' financial interests.  To accomplish this, Congress prohibited hospitals and certain other health care providers from submitting claims to Medicare for certain services provided to patients referred by a doctor with whom the provider has a financial relationship, unless the relationship falls within an applicable statutory or regulatory exception.  Congress also prohibited Medicare from paying for services rendered pursuant to a prohibited referral.  42 U.S.C.§§ 1395nn(a)(1), (g)(1); United States v. Rogan, 459 F. Supp. 2d 692, 711 (N.D. Ill. 2006), aff'd 517 F.3d 449 (7th Cir. 2008).

Originally, the Stark Statute applied only to Medicare claims.  However, in 1993, Congress passed a law (which took effect in 1995) extending the provisions of the Stark Statute to Medicaid claims.   42 U.S.C. § 1396b(s) provides that in situations where a particular medical service is covered "to the same extent and under the same terms and conditions" by the Medicare program and a state Medicaid program, the federal government may not reimburse the state for Medicaid claims that would have

2

violated the Stark Statute had the claims been submitted to the Medicare program.[1]  In

other words, if a health care provider has a financial relationship with a physician that

violates the Stark Statute, the federal government will not pay for Medicaid claims for

designated health services that arise out of that relationship.

      The False Claims Act, 31 U.S.C. § 3729, <u>et seq.</u>, prohibits parties from

submitting, or causing others to submit, false claims for payment to the federal

government.   Under the Medicaid program, the federal government does not pay

Medicaid providers directly.   Instead, Medicaid providers submit claims for payment

to the states, which pay the claims and then seek partial reimbursement from the

federal government.   If a Medicaid provider knowingly or recklessly submits to a

state Medicaid program claims for services that are prohibited by 42 U.S.C. §

1396b(s) without disclosing the potential Stark issue, then that provider may be held

liable under the FCA for causing the state Medicaid program to submit false claims

for payment to the federal government.   *See* <u>United States ex rel. Baklid-Kunz v.</u>

<u>Halifax Med. Ctr.</u>, No. 09-1002, 2012 WL 921147, *3-4 (M.D. Fla. March 19, 2012)*;*

---

[1] Section 1396b(s) states:

"Notwithstanding the preceding provisions of this section, no payment shall be made to a
State under this section for expenditures for medical assistance under the State plan
consisting of a designated health service (as defined in subsection (h)(6) of section
1395nn of this title) furnished to an individual on the basis of a referral that would result
in the denial of payment for the service under subchapter XVIII of this chapter if such
subchapter provided for coverage of such service to the same extent and under the
same terms and conditions as under the State plan, and subsections (f) and (g)(5) of
such section shall apply to a provider of such a designated health service for which
payment may be made under this subchapter in the same manner as such subsections
apply to a provider of such a service for which payment may be made under such
subchapter."

Rogan, 459 F. Supp.2d at 722-23.

II.    THE DEFENDANTS' ATTEMPT TO NULLIFY
       42 U.S.C. § 1396b(s) SHOULD BE REJECTED

As discussed above, 42 U.S.C. § 1396b(s) expressly extends the restrictions of the Stark Statute to Medicaid providers, and it explicitly states that "no payment shall be made" by the federal government for Medicaid claims that violate these restrictions. The Defendants' motion asks this Court to nullify 42 U.S.C. § 1396b(s) by holding that Medicaid providers are free to disregard the Stark Statute when submitting Medicaid claims, and that the federal government has no legal recourse against such providers under the Stark Statute, the False Claims Act, or 42 U.S.C. § 1396b(s), when they do. Although the Defendants contend that the Relator's allegations represent "a clever, novel legal theory" (Defendants' Brief, p. 17), it is actually the Defendants' arguments that are novel and inconsistent with all existing legal authority.

As discussed in the government's previous statement of interest, the language of 42 U.S.C. § 1396b(s) is clear, and all of the courts that have addressed the question of whether the Stark Statute applies to Medicaid claims  – including the United States Court of Appeals for the Eleventh Circuit – have stated that it does.  See Fresenius Medical Care Holdings, Inc. v. Tucker, 704 F.3d 935, 937(11th Cir. 2013); United States ex rel. Osheroff v. Tenet Healthcare Corp., No. 09-22253-CIV, 2012 WL 2871264, at *6 (S.D. Fla. July 12, 2012); Halifax Med. Ctr., 2012 WL 921147 at *3-4; Rogan, 459 F. Supp.2d at 722-23.

The Defendants' motion presents five arguments regarding 42 U.S.C. § 1396b(s), each of which would effectively nullify the statute, and none of which are

4

supported by the language or legislative history of the statute or by any case law.

The Defendants' first argument is that the commentary to a proposed regulation that was issued for public comment in 1998 indicates that the Centers for Medicare and Medicaid Services (CMS) did not want the Stark Statute prohibitions to apply to Medicaid claims.  Defendants' Brief, p. 12 (citing 63 Fed. Reg. 1659, 1704 (January 9, 1998)).  The Defendants' reliance on this proposed regulation should be rejected for three reasons.   First, the language cited by the Defendants is from commentary that related to a proposed regulation that was never adopted by the government, and therefore is not binding.

Second, the Defendants' interpretation of the language is based on selective and misleading snippets.    Fairly read, the text makes clear that although the administrative sanctions available to the government in the Medicare context (where the Federal Government pays providers directly) are not available in the Medicaid context (where it pays providers indirectly through the states), the Federal Government **will not pay** for Medicaid claims for designated health services that arise out of financial relationships that violate the Stark Statute.    Thus, the proposed regulation is consistent with the Relator's theory that the Defendants **caused** the State of Florida to submit false claims to the Federal Government.

Third, federal agencies do not have the legal authority to override federal statutes, so even if the draft regulation had been adopted and even if it had been intended as an agency rejection of 42 U.S.C. § 1396b(s), there would  still be no basis for overriding the statute.  5 U.S.C. § 706; Chevron, U.S.A., Inc. v. Natural Resources

Defense Council, 467 U.S. 837, 842-43 (1984) ("If the intent of Congress is clear, that

is the end of the matter; for the court, as well as the agency, must give effect to the

unambiguously expressed intent of Congress.").

The Defendants' second argument is that another CMS regulation, 42 C.F.R.

§435.1002(a), negates 42 U.S.C. § 1396b(s) because it discusses federal

reimbursement to states for Medicaid claims without mentioning the restrictions of 42

C.F.R. §435.1002(a).  Defendants' Brief, pp. 13-15.  This argument should be rejected

because there is no inconsistency between the statute and regulation at issue.  42

C.F.R. §435.1002(a) is simply a broad overview of the process by which the Federal

Government reimburses states for Medicaid services.  It is true that this particular

regulation does not mention that the Federal Government will not reimburse states for

Medicaid claims that were submitted in violation of the Stark Statute or 42 U.S.C. §

1396b(s).  However, it also does not mention that the Federal Government will not

reimburse states for Medicaid claims for services that were not actually provided or

were medically unnecessary, or for claims that falsely describe the services that were

provided, or for services that were rendered by unlicensed and unqualified individuals.

These issues are addressed elsewhere in the statutes and regulations that govern the

Medicaid program.  The fact that 42 C.F.R. §435.1002(a) does not include a

comprehensive list of all of the circumstances in which the Federal Government will

**not** reimburse states for Medicaid claims does not mean that those circumstances

(including situations involving violations of the Stark Statute) do not exist.

Furthermore, as noted above, regulations cannot override statutes even when

6

they are inconsistent.   The Defendants acknowledge that "agency regulations do not trump statutes," but then ask this Court to "interpret" and "harmonize" the statute and regulation at issue in such a way that a statute that says that "no payment shall be made" for a category of claims really means that states are always "entitled" to federal payment for claims submitted in violation of the statute.   Defendants' Brief, pp. 13-15. The Defendants' argument is specious, and should be rejected.

The Defendants' third argument is that  42 U.S.C. § 1396b(s) does not apply in this case because Florida Medicaid does not provide coverage "to the same extent and under the same terms and conditions" as the Medicare program.  Defendants' Motion to Dismiss, p. 15-17.   Specifically, the Defendants contrast Florida Medicaid's coverage of "medically necessary" services with Medicare's coverage of services that are "reasonable and necessary."    This asserted distinction, such as it is, is irrelevant because the issue of medical necessity is immaterial in Stark cases.    The Stark Statute specifies that no claim for any service provided pursuant to a tainted referral may be submitted to, or paid by Medicare, **even if the service would otherwise be payable** by Medicare.  42 U.S.C. §1395nn(a)(1)(A).  Likewise, the question of medical necessity has no bearing on the applicability of the False Claims Act or of Section 1396b(s).

As discussed on pages 4-6 of the United States' February 14, 2013 Statement of Interest, the controlling questions under Section 1396b(s) are whether Medicare covers the types of medical services at issue and whether the services at issue are properly characterized as "designated health services" under both federal and state

rules.   Defendants erroneously contend that for the Stark prohibition to apply, the state

Medicaid program must be identical in every respect to the Medicare program.

Because every state Medicaid program contains some unique features that distinguish

it from the Medicare program, the Defendants' interpretation of Section 1396b(s) would

essentially nullify the statute, a result that would contravene fundamental principles of

statutory construction.   See In re Read, 692 F.3d 1185, 1191 (11th Cir. 2012).

     The Defendants' fourth argument is that violations of the Stark Statute are not

"material" to the Federal Government's decision to reimburse Medicaid claims.

Defendants' Brief, pp. 17-18.   This argument is contrary to the plain language of 42

U.S.C. § 1396b(s), which expressly states that "no payment shall be made to a State"

for Medicaid claims based on referrals that would violate the Stark Statute if presented

to Medicare.   The Defendants' suggestion that the United States never seeks to apply

the Stark Statute to Medicaid claims overlooks United States v. Rogan, 459 F. Supp.

2d 692, 710-11 (N.D. Ill. 2006), aff'd 517 F.3d 449 (7th Cir. 2008), a case in which the

United States successfully did exactly that.

     The Defendants' fifth argument is that "regulatory ambiguities" render 42 U.S.C.

§ 1396b(s) so ambiguous that claims submitted in violation of the statute cannot be

considered "false" within the meaning of the False Claims Act.   Defendants' Brief, pp.

18-19.   This argument should be rejected for three reasons.   First, there is nothing

ambiguous about the fact that 42 U.S.C. § 1396b(s) extends the application of the

Stark Statute to Medicaid claims, and the case law on the subject has been clear and

consistent.   The Defendants seek to manufacture ambiguity with misleading citations

of one regulation that was never adopted and one regulation that does not have

8

anything to do with any issues in this case.   These arguments are flimsy at best.

Second, as discussed above, regulatory ambiguities are irrelevant when the underlying statute at issue is clear and unambiguous.  <u>Chevron</u>, 467 U.S. at 842-43. The Relator in this case is not basing her False Claims Act claims on alleged violations of CMS regulations, but rather on alleged violation of two statutes – the Stark Statute and 42 U.S.C. § 1396b(s) – that are clear on their face.  The Defendants' attempt to create ambiguities where none exist does not provide a basis for excusing non-compliance with these statutes.

Third, even if the statutes at issue contained some ambiguity, it would only be relevant to the extent that the Defendants acted based on a reasonable interpretation of the ambiguous requirement.  *See* <u>United States ex rel. Walker v. R&F Properties of Lake County, Inc.</u>, 433 F.3d 1349, 1357-58 (11th Cir. 2005).  If the Defendants wish to raise this as a defense, they should do so in their answer, not in a motion to dismiss. Here, the Defendants have not contended that they relied on (or even considered) any of the legal arguments raised in their briefs at the time they submitted the Medicaid claims at issue in this case.   To the extent that these arguments and interpretations were developed after the fact by defense counsel, they would be irrelevant to the question of the Defendants' state of mind during the time period at issue in this case. The Defendants themselves admit that "no court has previously addressed" the arguments presented in their brief.  Defendants' Brief, p. 19.  In short, the Defendants have not provided a factual record to support a scienter defense, and it would be premature for the Court to address this issue at this stage of the litigation.

III.   THE DEFENDANTS CONTINUE TO OVERSTATE THE RELATOR'S
       PLEADING OBLIGATIONS ON THE ISSUE OF FAIR MARKET VALUE

The Defendants' motion to dismiss overstates the amount of factual detail that the

Relator is required to include in her complaint regarding the fair market value of the

physician compensation arrangements at issue.  For example, the Defendants contend

that the Relator's fair market value allegations are deficient because the Relator's

complaint cited national physician compensation statistics rather than statistics that focus

on the Defendants' local market. Defendants' Brief, pp. 8-9.  The Defendants' arguments

repeat arguments that they made in their prior motion to dismiss.  These arguments were

fully addressed on pages 8-9 of the United States' February 14, 2013 Statement of

Interest.  As explained in that brief, the issue of fair market value is a complex factual

question, frequently requiring expert analysis, that is not ripe for resolution at this stage

of the litigation.  The Defendants' contention that alternate measures of fair market value

would be superior to the measure utilized by the Relator goes to the ultimate weight a

factfinder should give to Relator's methodology, not whether the Relator has met her

pleading burden.

It is also important to note that the Defendants bear the burden of proof on their

own affirmative defenses.  To the extent that the issue of fair market value arises in the

context of a Stark Statute exception, it is the Defendants, rather than the Relator, who

bear the burden of proof on the issue.  This issue was fully addressed on pages 6-8 of

the government's February 14, 2013 Statement of Interest.

IV.     ANY DISMISSAL BASED ON  FAILINGS IN THE RELATOR'S
        <u>PLEADINGS SHOULD BE WITHOUT PREJUDICE TO THE UNITED STATES</u>

In addition to the issues discussed above, the Defendants have raised other challenges to the adequacy of the Relator's Third Amended Complaint.    The United States does not address those arguments here, except to request that, should the Court dismiss the Relator's complaint for a pleading inadequacy, such dismissal be without prejudice to the United States. Deficiencies in a relator's pleadings should not preclude the government from bringing a future case for the conduct at issue if the government subsequently uncovers evidence of a violation of federal law.    *See* <u>U.S. ex rel. Williams v. Bell Helicopter Textron, Inc.</u>, 417 F.3d 450, 455-56 (5th Cir. 2005); <u>United States ex rel. King v. DSE, Inc.</u>, Case No. 8:08-CV-2416-T-23EAJ, 2013 WL 610531, at *11 (M.D. Fla., January 17, 2013) (Report and Recommendation) <u>adopted</u> 2013 WL 608541 (February 19, 2013).

## CONCLUSION

For the foregoing reasons, the United States respectfully asks the Court to rule that the Stark Statute applies to the Medicaid claims at issue, and that the Defendants bear the burden of pleading the applicability of any Stark Statute exceptions.    Also, if the Court dismisses the case based on any inadequacy in the Relator's pleadings, the United States asks that the dismissal be without prejudice to the United States.

Respectfully submitted,

**STUART F. DELERY**
Assistant Attorney General

**A.  Lee Bentley**
Acting United States Attorney


*/s David T. Cohen*
MICHAEL D. GRANSTON
TRACY L. HILMER
DAVID T. COHEN
Department of Justice, Civil Division
601 D Street, N.W., Room 9908
Washington, D.C.  20004
Tel: (202) 307-0136
Fax: (202) 307-3852
Email: david.t.cohen@usdoj.gov


*/s Charles T. Harden III*
CHARLES T. HARDEN III
Assistant United States Attorney
Florida Bar No. 97034
400 North Tampa Street, Suite 3200
Tampa, Florida 33602
Tel: (813) 274-6316
Fax: (813) 274-6200
Email: charles.harden@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on August 12, 2013, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to, or that I have otherwise caused a copy of the attached to be served upon, the following:

| | |
|---|---|
| Andrew H. McElroy, III<br>Andrew.McElroy@myfloridalegal.com<br>Assistant Attorney General<br>Medicaid Fraud Control Unit<br>Complex Civil Enforcement Bureau<br>PL-01, The Capitol<br>Tallahassee, Florida 32399-1050<br>*Counsel for the State of Florida* | Jillian L. Estes<br>jestes@jameshoyer.com<br>Christopher Casper<br>ccasper@jameshoyer.com<br>Sean P. Keefe<br>skeefe@jameshoyer.com<br>James, Hoyer, Newcomer & Smiljanich, P.A.<br>4830 West Kennedy Blvd.<br>One Urban Center, Suite 550<br>Tampa, FL 33609<br>*Counsel for Relator* |
| Latour "LT" Lafferty<br>Fowler White Boggs P.A.<br>501 E. Kennedy Blvd., Suite 1700<br>Tampa, FL 33602<br>ltlafferty@fowlerwhite.com<br>*Counsel for Defendants* | Jesse A. Witten (pro hac vice)<br>jesse.witten@dbr.com<br>Mark H. M. Sosnowsky (pro hac vice)<br>mark.sosnowsky@dbr.com<br>Drinker Biddle & Reath LLP<br>1500 K Street, NW, Suite 1100<br>Washington, DC 20005<br>*Counsel for Defendants* |

BY:     */s Charles T. Harden III*
          CHARLES T. HARDEN III
          Assistant United States Attorney

13